**DENVER ROCK DRILL MFG. CO. v. UNITED STATES.**

No. L–129.

Court of Claims.

June 6, 1932.

WHALEY, Judge, dissenting.

Robert Ash, of Washington, D. C. (T. J. Reilly, of Washington, D. C., on the brief), for plaintiff.

J. A. Rees, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

Plaintiff sues to recover $18,455.81, being the difference between the income and profits tax paid for the fiscal years ending March 31, 1914 to 1918, inclusive, and for the fiscal years 1920 and 1921, and the tax computed for those years on the basis of adequate deductions from gross income for depreciation of properties used in its business. It bases its right to recover these overpayments upon the provisions of section 284 (c) of the Revenue Act of 1926 (26 USCA § 1065 (c), which provides that under certain circumstances overpayments resulting from the failure to take adequate deductions in prior years shall be refunded or credited without the filing of a claim therefor and regardless of the expiration of the five-year limitation period for the making of refunds without a claim.

The defendant demurs to the petition on the grounds, first, that it does not set forth a cause of action against the United States, and, second, that it does not set forth a cause of action within the jurisdiction of this court. It is contended in support of the demurrer, first, that under section 3226, Rev. St., as amended (26 USCA § 156), there exists no right to maintain a suit for the recovery of a tax unless a timely claim for refund therefor has been filed, and that section 3228, Rev. St., as amended by section 619 (c) of the Revenue Act of 1928 (26 USCA § 157), provides that claims for refund must be presented to the commissioner within four years next after the payment of the tax; and, second, that even if plaintiff is entitled to maintain this suit, it is not entitled to recover the overpayments for the fiscal years ending March 31, 1914 to 1921, inclusive, for the reason that it reported no taxable income and paid no tax for the fiscal year ending March 31, 1922, and the Commissioner of Internal Revenue in his determination, in March, 1927, with respect to the fiscal years ending March 31, 1922 to 1926, inclusive, determined no additional tax for the fiscal year ending March

31, 1922, nine months of which constituted the last excess-profits-tax period under the statute, and therefore did not decrease invested capital for this fiscal year within the meaning of section 284 (c).

Plaintiff duly filed income-tax returns for the fiscal years ending March 31, 1914 to 1916, inclusive, and income, excess-profits, and war-profits tax returns for the years ending March 31, 1917 to 1921, inclusive, and paid the taxes shown thereon to be due.

The various revenue acts applicable to the calendar years 1917 to 1921, inclusive, imposed excess-profits taxes, the computation of which necessitated the determination of invested capital as defined by the statutes, inasmuch as the excess-profits tax was computed on the earnings for each taxable year in excess of a fair return on the invested capital.

March 17, 1923, the revenue agent made a report of his investigation of plaintiff's returns for the fiscal years ending March 31, 1914 to 1921, inclusive, recommending depreciation adjustments which decreased plaintiff's invested capital. The commissioner approved the revenue agent's recommendation, and on October 15, 1923, notified it of his determination of overpayments for the fiscal years ending in 1914 to 1919, inclusive, and a deficiency for 1920, as follows:

| Year ended Mar. 31— | Deficiency | Overpayment |
|---|---|---|
| 1914 | | $476.37 |
| 1915 | | 637.16 |
| 1916 | | 512.66 |
| 1917 | | 8,138.72 |
| 1918 | | 44,274.61 |
| 1919 | | 2,737.12 |
| 1920 | $10,011.84 | |
| Total | 10,011.84 | 56,776.64 |

The commissioner refunded or credited to the plaintiff the above-mentioned overpayments.

The revenue agent's report of March 17, 1923, and the determination of the commissioner, did not properly compute plaintiff's correct tax liability for the years in question for the reason that the depreciation adjustments made were less than the deductions to which the plaintiff was entitled under the statutes.

March 23, 1927, a revenue agent made a report of his investigation of plaintiff's returns for the fiscal years ending March 31, 1922 to 1926, inclusive, in which he recommended an additional tax for the fiscal years ending March 31, 1923 to 1926, inclusive, of $17,528.97. Plaintiff reported a loss for the fiscal year 1922 and paid no income or excess-profits tax for that year. The revenue agent likewise determined a loss for the fiscal year 1922. The commissioner approved the report and audit of the revenue agent and assessed the additional tax of $17,528.97 for the fiscal years ending March 31, 1923 to 1926, inclusive, together with interest of $4,996.83, which was paid October 24, 1927.

The commissioner, in his audit in 1927, recomputed the allowable deductions for depreciation for the fiscal years ending March 31, 1914 to 1922, inclusive, and determined that the allowable deductions for depreciation for the fiscal years ending March 31, 1914 to 1918, inclusive, and 1920 to 1922, inclusive, were in excess of those taken by the plaintiff in the returns filed and those allowed by the commissioner in his determination in 1923, in the following amounts:

| Fiscal year ended Mar. 31— | Additional depreciation |
|---|---|
| 1914 | $12,278.15 |
| 1915 | 27,074.08 |
| 1916 | 20,960.24 |
| 1917 | 11,336.41 |
| 1918 | 21,230.94 |
| 1920 | 30,867.54 |
| 1921 | 7,049.74 |
| 1922 | 20,197.05 |

The above-mentioned depreciation adjustments reflect the proper depreciation allowable under the statutes for the years mentioned. Such adjustments also decreased plaintiff's invested capital for the fiscal years 1917 to 1921, inclusive. Inasmuch as plaintiff incurred a loss for the fiscal year ending March 31, 1922, nine months of which fell in the excess-profits tax year of 1921, the failure of the taxpayer to take adequate deductions for depreciation in prior years had no effect upon plaintiff's income or excess-profits tax liability for said fiscal year ending March 31, 1922.

A computation of the income tax and the excess-profits and war-profits tax for the fiscal years ending March 31, 1914 to 1918, inclusive, and the fiscal years ending March 31, 1920 and 1921, on the basis of adequate deductions for depreciation allowable under the statutes for such years, shows overpayments totaling $18,455.81, as follows:

| Fiscal year ended Mar. 31— | Amount |
|---|---|
| 1914 | $4.52 |
| 1916 | 262.00 |
| 1917 | 999.47 |
| 1918 | 8,261.92 |
| 1920 | 7,943.18 |
| 1921 | 984.72 |

September 21, 1928, plaintiff filed claims for refund of the amounts above mentioned on the ground that such overpayments should be refunded under section 252 of Revenue Act 1921 (42 Stat. 268), section 281 of 1924 (26 USCA § 1065 note), and section 284 of 1926, 26 USCA § 1065 and note. December 21, 1928, the commissioner disallowed these claims and notified the plaintiff that, "The rejection of these claims will appear officially in the next schedule to be approved by the commissioner." Plaintiff requested a reconsideration of the claims, and on October 21, 1929, the commissioner advised it that no further consideration would be given to the case.

In the circumstances of this case we are of opinion that plaintiff is not entitled to recover the overpayments for the fiscal years ending March 31, 1914 to 1921, inclusive. The manifest intent and purpose of section 284 (e) of the Revenue Act of 1926 and similar provisions of prior revenue acts were to authorize a refund for prior years only when the taxpayer is called upon to pay a greater excess-profits tax for the year under consideration than he would be required to pay if no adjustments of deductions taken in prior years were made. The amount of the profits tax payable in any of the excess-profits tax years is dependent upon the amount of invested capital. When the invested capital for any year is decreased for any reason, the profits-tax liability is correspondingly increased. The deductions for depreciation taken by the taxpayer from gross income from year to year reduce the amount of invested capital to be used in determining the profits-tax liability. The depreciation reserve charged against invested capital by the taxpayer in making its return for each year is ordinarily the aggregate of the deductions taken from gross income in prior years. When, therefore, the commissioner, in making an audit of the tax liability for a particular year, makes adjustments and increases the deductions taken in prior years and increases the amount chargeable against invested capital for the year under consideration, the profits-tax liability for the last-mentioned year is increased. The taxpayer is therefore required to pay a larger tax for the year under consideration in which invested capital is decreased than he would be called upon to pay if such adjustments were not made. At the same time, due to the bar of the statute of limitation, the overpayments for prior years resulting from the increase in the deductions taken could not be refunded but for some special provision in the statute. In these circumstances Congress enacted the section providing that in the case of such decrease in invested capital any overpayments for prior years resulting from failure of the taxpayer to take adequate deductions from gross income should be refunded without the filing of a claim, and notwithstanding the expiration of the statute of limitation. We think section 284 (c) was not intended to apply if, for the year under consideration, the commissioner determines that the taxpayer instead of having a net income sustained a loss. In such case invested capital is not important and there is no decrease of invested capital within the meaning of the statute. The amount of depreciation reserve existing in any year has no effect upon the amount of a net loss which may, under certain circumstances, be deducted in a subsequent year.

The situation presented in this case is the same as if the taxpayer had taken certain deductions from gross income for depreciation in all of the excess-profits tax years from 1917 to December 31, 1921, inclusive, and the commissioner, in the audit of the tax liability for taxable years subsequent thereto, for which no profits tax was imposed, should determine that the annual deduction for depreciation should be greater than had been taken in prior years. In such a case the taxpayer would not be entitled under section 284 (c) to a refund for prior years on the ground that it had failed to take adequate deductions for depreciation. In this case the plaintiff made its returns and paid its income and profits tax on the basis of the deductions taken thereon for the fiscal years ending March 31, 1914 to 1921, inclusive. In March, 1923, the commissioner made an audit of the fiscal years ending March 31, 1921, and prior years. In this audit he made adjustments in the plaintiff's depreciation account and increased the deductions taken by the plaintiff for the fiscal years 1914 to 1921, inclusive, and refunded or credited the overpayments for prior years based upon the depreciation adjustments made. The depreciation deductions determined by the commissioner October 15, 1923, for the fiscal years 1914 to 1921, inclusive, were less than the deductions allowable under the statutes; but this suit is not predicated upon that determination. If it were, it could not be maintained, inasmuch as the petition was not filed until more than six years after October 15, 1923. The plaintiff is therefore in position of having paid income and profits taxes for the fiscal years ending March 31, 1914, to March 31, 1922, inclusive, on the basis of the net income, invested capital, and the deductions claimed by it and allowed by the commis-

sioner. The fact that the deduction taken and allowed in each of these years was less than that allowable under the statutes does not alone entitle plaintiff to a refund for the fiscal years ending March 31, 1914 to 1921, inclusive.

The situation contemplated by section 284 (e), which will give the taxpayer a right to a refund for prior years, is a decrease of invested capital for the year under audit, which increases the profits tax for that year. When such decrease of invested capital and increase of the tax which would otherwise be payable results from an increase of deductions from income taken by the taxpayer in preceding years, it is apparent that, if other questions do not enter into the computation of the income and the tax, an overpayment will be shown in the years prior to the year under consideration, if the increased deductions are given effect in prior years. In these circumstances Congress considered that, from the standpoint of abstract justice, the taxpayer should receive the return of the excess tax paid for the previous years in so far as such excess resulted from the increase of deductions taken in those years, if he should be called upon to pay an increased tax brought about by the action of the commissioner in increasing the deductions taken in previous years and decreasing the invested capital for the year under consideration. In the absence of section 284 (e) the return of the overpayments would be impossible by reason of the expiration of the statute of limitation. "To remedy this injustice of increasing the taxpayer's taxes on account of his mistakes in accounting without giving him the benefit of the sums already received by reason of those mistakes, the provision in question was enacted." Southwestern Oil & Gas Co. v. United States (D. C.) 29 F.(2d) 404, 407; Id. (C. C. A.) 34 F.(2d) 446.

In view of our conclusion that the plaintiff is not entitled to recover upon the merits, it is not necessary to discuss the contention of the defendant that a suit may not be maintained to recover overpayments under section 284 (e) of the Revenue Act of 1926, 26 USCA § 1065 (e) unless the taxpayer filed a claim for refund within the time prescribed by sections 3228 and 3226, R. S., as amended (26 USCA §§ 157 and 156).

The demurrer is sustained, and the petition is dismissed. It is so ordered.

BOOTH, Chief Justice, and WILLIAMS and GREEN, Judges, concur.

WHALEY, Judge (dissenting).

I am unable to agree with the opinion of the majority in support of the demurrer.

In my opinion, the plaintiff is entitled to maintain this suit and to recover any overpayments of taxes for the years involved resulting from its failure to take adequate deductions for depreciation. Section 252 of the Revenue Act of 1921 (42 Stat. 268) provides: " * * * That if upon examination of any return of income made pursuant to the Revenue Act of 1917, the Revenue Act of 1918, or this Act, the invested capital of a taxpayer is decreased by the Commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that an amount of income tax in excess of that properly due was paid in any previous year or years, then, notwithstanding any other provision of law and regardless of the expiration of such five-year period, the amount of such excess shall, without the filing of any claim therefor, be credited or refunded as provided in this section. * * * "

This provision was continued in section 281 (e) of the Revenue Act of 1924 (26 USCA § 1065 note), and section 284 (e) of the Revenue Act of 1926, 26 USCA § 1065 (e), in slightly different language but with the same meaning and effect.

These sections give no discretion to the Commissioner of Internal Revenue. In their scope and effect they are not purely administrative but are mandatory. On a proper state of facts they create an absolute and unqualified claim against the United States, and give the taxpayer an unquestioned right to sue for the same, if refund should be denied him by the Bureau of Internal Revenue. The sections are mandatory in their provisions that the overpayments resulting from the causes specified shall be refunded. This view is supported by the fact that the purpose of Congress in enacting the provision was to make an exception to sections 3228 and 3226, Revised Statutes, as amended, requiring a timely claim for refund as a condition precedent to the right to a refund after a stated time, or to sue therefor if it should be denied by the commissioner.

The provision is remedial and the language is exceptional. Every excess-profits tax year requires the determination and computation of statutory invested capital. It is provided that if the commissioner has under consideration and audit a return of income and in connection with such determination

and audit he decreases the invested capital for such year below what it would otherwise be under the statute by going back over prior taxable years and redetermining and increasing the deductions claimed by the taxpayer for such prior years, with the result that on the basis of inadequate deductions so redetermined and computed there has been an overpayment of income, war-profits, or excess-profits taxes in such prior years, no claim for refund shall be required and such overpayments shall be refunded notwithstanding any other provision of law and regardless of the claim being filed. The congressional history of this section supports this view. Ways and Means Committee Report No. 350, p. 15; Senate Committee on Finance Report No. 275, p. 21.

The majority opinion holds that notwithstanding the statutory invested capital for the fiscal year ending March 31, 1922, was decreased below the amount which it would otherwise have been if the depreciation reserve had not been increased through the increase of deductions taken in prior years, section 284 (c) of the Revenue Act of 1926 does not authorize the refund of overpayments for the prior years unless an additional tax results from the decrease in invested capital. The language of section 284 does not support this position. The only justification for this contention is the fact that the first nine months of the taxable year ending March 31, 1922, in which the commissioner in this case decreased the statutory invested capital because of the failure of the taxpayer to take adequate deductions for depreciation in prior years, constituted the end of the imposition of the excess-profits tax. Such tax was imposed for the calendar years 1917 to 1921, inclusive. The Revenue Act of 1921, approved November 24, 1921, repealed the imposition of the excess-profits tax, effective December 31, 1921. There was no excess-profits tax prior to 1917. The provision that if invested capital is decreased and such decrease is due to the failure of the taxpayer to take adequate deductions in prior years, the overpayment resulting therefrom should be refunded without regard to other provisions of law, and without filing a claim for refund, was first enacted as part of section 252 of the Revenue Act of 1921. The language is plain and unambiguous. It is a remedial provision and should be liberally construed. The only condition made necessary by the statute to the right of refund for prior years is that the statutory invested capital for the year under consideration must be decreased, as a result of the increase in the deductions taken in prior years, below what the invested capital would otherwise be under the statute if computed on the basis of deductions of gross income actually taken in the prior years. The statute was not directed to any one taxable year or to those years only in which an additional tax resulted from the decrease in invested capital; nor is there anything in the section to warrant the conclusion that it does not apply, if, for 1921, the commissioner, although decreasing the statutory invested capital for that year because of inadequate deductions for prior years, determines a net loss. At the time this provision was enacted there were hundreds of cases involving excess-profits tax years pending in the Internal Revenue Bureau, unaudited and undecided.

Congress knew that in some years there would be additional taxes and in other years losses. The statute authorized the refund of overpayments for prior years if the statutory invested capital for the subsequent year under consideration should be decreased and such decrease should be due to the fact that the taxpayer failed to take adequate deductions in prior years. No exception was made. Had Congress intended that the taxpayer should have no right to the return of overpayments for prior years, if the decrease in invested capital should not result in an additional tax, it would doubtless have so provided.

In order to deny recovery to the plaintiff a meaning must be read into the words of the statute which is not apparent when rationally interpreted. The literal meaning of the words employed in the statute is most important. See Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156. "And the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." Lynch v. Alworth-Stephens Co., 267 U. S. 364, 370, 45 S. Ct. 274, 276, 69 L. Ed. 660. In DeGanay v. Lederer, 250 U. S. 376, 39 S. Ct. 524, 63 L. Ed. 1042, it is held this rule applies to taxing acts. The taxpayer is entitled to have the tax laws liberally construed in his favor and doubts resolved in his favor and against the government. United States v. Merriam, 263 U. S. 179, 188, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547; Bowers v. N. Y. & Albany Co., 273 U. S. 346, 350, 47 S. Ct. 389, 71 L. Ed. 676.

The majority opinion strictly construes the statute against the taxpayer and all doubts and interferences are decided in favor of the government.

The commissioner decreased the invested capital of the plaintiff for the fiscal year ending March 31, 1922, for the reason the taxpayer failed to take adequate deductions in prior years with the result that plaintiff overpaid its taxes for the fiscal years 1914 to 1921, inclusive, in amounts totaling $18,455.81. The statute demanded this overpayment should be credited or refunded. The fact that the fiscal year ending March 31, 1922, happened to be the last excess-profits tax year, and the fact that a loss was determined for that year, do not, in my opinion, render the provisions of section 234 (c) of the Act of 1926 inapplicable or prevent the plaintiff from recovering the overpayments.

In my opinion the demurrer should be overruled, and judgment entered for the plaintiff in the full amount of the overpayments.