**FIRST NAT. BANK OF KANSAS CITY, MO., v. UNITED STATES.**

**No. 9623.**

Circuit Court of Appeals, Eighth Circuit.

May 15, 1933.

William C. Dorsey, of Omaha, Neb. (Malcolm Baldrige, of Omaha, Neb., on the brief), for appellant.

Charles K. Hoover, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (William L. Vandeventer, U. S. Atty., and A. B. Lovan, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before KENYON, and SANBORN, Circuit Judges, and REEVES, District Judge.

SANBORN, Circuit Judge.

The appeal is from a judgment in favor of the government in an action brought by the appellant taxpayer to recover alleged overpayments of income and excess profits taxes.

In 1905, the taxpayer invested $450,000 in a banking house, its site and equipment. In 1905 and 1906 it charged off $125,000 of this investment against undivided profits, and carried the building and equipment on its books at $325,000 until the year 1919, when it purchased adjoining property for $80,000, thereby increasing its building account to $405,000. Beginning with 1910 the taxpayer each year purchased furniture and fixtures, and in its returns deducted the cost thereof from its gross income as expense, and charged it to expense on its books. Up to the year 1919, in making its returns the taxpayer took no depreciation upon its building or equipment. It filed no claim for refund of any overpayment of taxes for the years 1909 to 1918.

In 1926, the Commissioner of Internal Revenue made an audit of the taxpayer's books and returns, for the purpose of determining its correct tax liability for the years 1919, 1920, and 1921. As a result of this audit, the taxpayer's invested capital for the year 1919 was ascertained to be $3,740,699.22, whereas it had reported it to be $3,658,404.07. For the year 1920, invested capital, as determined by the Commissioner, was $3,965,924.17; as returned by the taxpayer it was $3,946,962.85. For the year 1921, invested capital, as determined by the Commissioner, was $4,290,586.36; as returned by the taxpayer it was $4,274,103.60. In ascertaining the invested capital for the year 1919, the Commissioner added to the taxpayer's capital assets as reported $153,245.04 ($125,000 charged off by the taxpayer out of the building account in 1905 and 1906 plus $28,245.04, the cost of furniture and fixtures subsequently purchased and charged to expense), and subtracted, as depreciation sustained during years prior to 1919, $129,836.50, thereby increasing the invested capital of the taxpayer as of January 1, 1919, as shown by its books and upon its return, by $23,408.54. For the year 1919, the Commissioner allowed an annual depreciation of $12,693.24, and as a result found that the taxpayer had paid $6,483.50 more in taxes than the law required, and refunded that amount. For the year 1920, the Commissioner allowed $13,426.55 as depreciation, and found an overpayment for that year of $994.35, which was refunded. For the year 1921 he allowed $13,851.03 as

depreciation and an overassessment of $3,-472.64, which was also refunded.

The taxpayer brought this suit upon the theory that for the years 1910 to 1918, inclusive, it had overpaid its income and excess profits taxes through its failure to take adequate depreciation for those years; that such overpayments were due to a decrease by the Commissioner of the taxpayer's invested capital for the year 1919; and that therefore it was entitled to a refund of such overpayments in addition to those which had been made for the years under audit.

The government denied that the taxpayer was entitled to a refund of such overpayments, as it had failed to make claims for refund and as the statute of limitations had run, although it was admitted that the taxpayer had overpaid its taxes for the years in question to the extent of $11,397.36.

The taxpayer relies upon paragraph (c) of section 284 of the Revenue Act of 1926, 44 Stat. 9, 66, 26 USCA § 1065 (c), which reads as follows: "If the invested capital of a taxpayer is decreased by the commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired."

The first question to be determined is whether the invested capital of the taxpayer was decreased by the Commissioner. If it was not, the taxpayer cannot maintain this action.

It was the opinion of the court below that the words "invested capital," as those words are used in paragraph (c), refer to invested capital as returned by the taxpayer, while the plaintiff claims that they refer to invested capital as it should have been returned by the taxpayer, or actual invested capital, and that, in any event, it was intended that this paragraph should apply to a situation such as this.

The invested capital of the taxpayer at the end of any one year was the cash paid in for its stock or shares, the cash value of its tangible property, and earned surplus and undivided profits. Section 326, Revenue Act of 1918, 40 Stat. 1057, 1092.

The taxpayer argues that such invested capital for 1919 was decreased by the audit

of the Commissioner made in 1926. It is obvious, however, that the taxpayer's invested capital, as defined by the statute, was not subject to either an increase or a decrease. It was a constant and was not subject to change. It might be underestimated or overestimated by the taxpayer, or the Commissioner might find it to be greater or less than it actually was, but it would be impossible either to decrease or increase it.

■ It is conceded that the invested capital as determined by the Commissioner for the years under audit was correct. That was the actual invested capital as ascertained, and not as increased or decreased. Since the invested capital as determined by the Commissioner was greater than the invested capital as reported by the taxpayer, the Commissioner did not decrease invested capital as reported unless it can be said that additions made by the Commissioner to invested capital must be disregarded in ascertaining whether there was a decrease. The taxpayer asserts that, if the Commissioner had found less accumulated depreciation than was reported, there would then have been no decrease in invested capital, but that, since he found more accumulated depreciation than was reported, there was a decrease, even though additions to invested capital more than offset it.

There is an office opinion found in Internal Revenue Bulletin, Cumulative Bulletin II–2 (1923) page 249, which indicates that the writer of that opinion was in accord with the taxpayer's theory. The opinion refers to the meager legislative history of paragraph (c) and quotes an explanation of its purpose made before the Senate Committee on Finance on September 14, 1921, a part of which we quote (page 250):

"You well know that under the excess-profits tax everything turns on invested capital. You get your principle of 8 per cent exemption on invested capital. Now, invested capital, in turn, included accumulated earnings, and to get at the earnings you have got to go back and trace the history of the corporation to see whether the accumulated earnings have been properly computed. That means, under the excess profits tax, that we should go back to the origin of the company, even if it was back as far as 1888. We would go back as far as we could. We may find in our examination somewhere some manifestly incorrect calculation of the earnings. One of the most common defects and one of the most common errors is the failure of the corporation to take sufficient depreciation into consideration.

That is one of the most common mistakes for corporations, and that was particularly true before the income tax became heavy. The corporations failed to take sufficient depreciation. Under such circumstances the accurate auditor would say, 'Gentlemen, in your 1914 return you did not take enough depreciation. The thing that you claim is accumulated earnings is not accumulated earnings. You have not established your depreciation yet.' The result is to reduce the amount of their invested capital and increase their expenditures for the period under consideration. If you force them to do that and take them over the past, it seems to me that it is only fair to give them a rebate for taxes overpaid.

"In 1914 the rate was 1 per cent. Assume that a man ought to have taken, say, $20,000 depreciation. He should have taken that much. If we make him do that, then it seems harsh to cut that down and not say, 'You can shake up your taxes for that year, it will be taken as a credit against the excess profits tax.'"

The conclusion expressed in the office opinion is (page 251): "Bearing in mind the purpose of the enactment and the harsh situation which it sought to remedy, it seems clear that effect may be given to its provisions only by construing the clause ' *    *    * the invested capital of a taxpayer is decreased' as having reference to any diminution in invested capital resulting from a failure to take adequate deductions in prior years, albeit the net results of an audit may, as in the instant case, result in an increase rather than a decrease in invested capital for the taxable year in question. Any other construction would in the opinion of this office, defeat the purpose of the enactment."

The difficulty with this construction is that it fails to give effect to the seemingly plain language of the statute. If the section provided that, if the invested capital of a taxpayer is redetermined by the Commissioner and if, upon such redetermination, it appears that the taxpayer has failed to take adequate deductions in previous years, with the result that there has been an overpayment of income or profits taxes in any previous year or years, then the amount of such overpayments shall be credited or refunded, the construction which the taxpayer urges would be justified. But the right to the return of the overpayments was made to depend upon a decrease by the Commissioner and not upon an audit disclosing a failure of the taxpayer to take adequate deductions for depreciation in prior years.

In Southwestern Oil & Gas Co. v. United States (D. C.) 29 F.(2d) 404 [affirmed (C. C. A. 3) 34 F.(2d) 446, certiorari denied 280 U. S. 601, 50 S. Ct. 82, 74 L. Ed. 646], the court held that, where the invested capital of a taxpayer was decreased by subtracting additional depreciation, and was otherwise increased, so that the net result was an increase in reported invested capital, paragraph (c) did not apply. Speaking of the purpose of this paragraph, the court said [page 407 of 29 F.(2d)]: "But, without such a provision of law as the paragraph under consideration, the return of the overpayments would be impossible by reason of the expiration of the time within which a claim for refundment could be made. To remedy this injustice of increasing the taxpayer's taxes on account of his mistakes in accounting without giving him the benefit of the sums already received by reason of those mistakes, the provision in question was enacted."

In Denver Rock Drill Mfg. Co. v. United States (Ct. Cl.) 59 F.(2d) 834, 837 (certiorari denied, 287 U. S. 651, 53 S. Ct. 115, 77 L. Ed. ——), the court said: "The situation contemplated by section 284 (c), which will give the taxpayer a right to a refund for prior years, is a decrease of invested capital for the year under audit, which increases the profits tax for that year."

Undoubtedly, the moral obligation of the government to return overpayments of taxes for a failure to take adequate depreciation is just as great whether there is an increase or a decrease in reported invested capital as a result of an audit. We think that Congress intended to avoid the practical unfairness which would result as between taxpayers if the right to refunds were made to depend upon an audit or redetermination by the Commissioner rather than upon a decrease of reported invested capital. If the government gains additional taxes by decreasing a taxpayer's reported invested capital, and this decrease is due to the Commissioner's accumulating the depreciation of prior years which the taxpayer was entitled to deduct from income, but did not deduct, then the government should be required to credit or refund the overpayments resulting from the failure of the taxpayer to take advantage of the depreciation which the government is using to increase its taxes. If the taxpayer, however, suffers no disadvantage from the redetermination of its invested capital, and the audit of the Commissioner merely discloses that mistakes were made in not taking deductions, and that therefore the government received more taxes than it should have received, that fact

alone should not give to the taxpayer whose returns were audited the right to receive a refund regardless of the expiration of the period of limitation, when other taxpayers who made the same mistakes but whose returns were not audited can have no refunds because their claims are barred.

 Our opinion is that the decrease in invested capital which gives to the taxpayer the right to a credit or refund because of inadequate deductions in previous years is a decrease of reported invested capital for the years under audit, and a consequent increase of tax liability for those years, and that, in determining whether invested capital has been decreased, both deductions and additions made by the Commissioner must be considered.

The judgment is affirmed.