**UNITED POCAHONTAS COAL CO. v.
UNITED STATES.**

No. 4704.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1941.

Richard B. Barker, of Washington, D. C. (Ivins, Phillips, Graves & Barker, of Washington, D. C., and Albert S. Kemper, Jr., of Bluefield, W. Va., on the brief), for appellant.

Arthur A. Armstrong, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to the Atty. Gen., Lemuel R. Via, U. S. Atty., of Huntington, W. Va., and Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

In this corporation income excess profits tax case the appellant taxpayer sued the United States in the district court to recover an overpayment of taxes for the year 1919 in the amount of $13,357.71. The government admitted the overpayment but defended on the ground that the claim was barred because no petition for refund had been filed within the time allowed by the applicable statute. To this the taxpayer replied that in this case no such petition for refund was required by reason of section 284(c) of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 220, which reads:

"If the invested capital of a taxpayer is decreased by the Commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired."

The case was tried by the district judge without a jury on a stipulation of facts in connection with numerous written exhibits. The question in the case was whether, on the facts stipulated, section 284(c) was applicable. In a fully considered opinion the district judge, for reasons hereafter mentioned, concluded that the statute was not applicable, and therefore entered judgment for the defendant, from which the taxpayer has appealed.

We briefly summarize the dominant facts appearing in the stipulation. The taxpayer is a West Virginia coal mining corporation which was actively engaged in operations for some years prior to 1917, when the first Excess-Profits Income Tax was enacted and which continued in force with amendments through 1921. In the several years 1917 to 1921, both inclusive, the taxpayer duly filed its income and

profits tax returns and paid the taxes shown thereon to be due, which, by reason of the new tax rates, were very heavy in amount for these years. The nature of the tax was such that the amount due varied inversely with the amount of the taxpayer's invested capital. In the taxpayer's return for 1919 it reported its invested capital as $754,035.95, and for 1921, $1,102,-429.04.

Shortly after 1921 the taxpayer determined that its invested capital ought fairly to be increased by a revaluation of its coal lands and plant and thereupon began negotiations with the Commissioner of Internal Revenue for a re-audit of its tax returns for the years 1917 to 1921, both inclusive. The taxpayer asked for an increase in its invested capital for these years, in somewhat varying amounts but approximately $500,000. The negotiations lasted over a period of several years, including various examinations and reports by field agents of the Commissioner, conferences of parties and counsel with the Commissioner or his representatives, the filing of briefs and the supplying of much additional information by the taxpayer. In the course of these proceedings the taxpayer filed various petitions for abatement and refund for various amounts of taxes applicable to each of the years and filed one or more waivers of timely assessment by the Commissioner as to one of the years. But unfortunately for the taxpayer no timely petition was filed for the overpayment of taxes for 1919.

On June 11, 1928, the Commissioner completed his re-audit of the taxpayer's income tax returns for the years 1917 to 1923, both inclusive. He concluded that there had been overassessments in the aggregate amount of $186,941.70 for the years 1917 to 1920 inclusive but also found a deficiency of $5,169.12 for 1921. Thereupon the Commissioner notified the taxpayer of the results of the re-audit with complicated explanatory statements of the changes made in the taxpayer's several yearly returns. This document is filed as Exhibit B with the stipulation and is the most important paper presented for our consideration. In it the Commissioner notified the taxpayer that the overassessments would be refunded and credited for all the years except 1918 and 1919. The amount for 1918 was $45,152.45, of which the Commissioner refused to refund $21,170.27 because no timely claim had been filed by the taxpayer. He also refused to refund an overpayment by the taxpayer in the amount of $22,013.27 for 1919, taking the position that under section 284(b) and (h) of the Revenue Act of 1926 no timely claim for refund had been filed within five years from the due date of the return or four years from the date the tax was paid; and that the taxpayer's claim filed March 16, 1925, was not in due time. As a result of the re-audits very substantial changes were made for each of the years 1917 through 1921 in the figures reported by the taxpayer in its returns for net income and invested capital and deductions for depreciation and depletion. For instance, in 1919 the taxpayer had reported net income in the amount of $359,198.69; and invested capital in the amount of $754,035.95; and had taken deductions for depreciation and depletion in the amount of $30,340.21. The Commissioner changed all these figures as follows: net income, $383,886.26; invested capital, $1,412,557.46; and depreciation and depletion $59,378.71. It will be noted that the net income was increased $24,-687.57; invested capital $658,521.51; and (importantly for this case) deductions for depreciation and depletion $29,038.50. In 1920 invested capital was increased by $555,431.50 as compared with the taxpayer's books; and additional deductions were allowed from income for depreciation and depletion, etc., in the amount of $52,264.46. In 1921 invested capital as returned by the taxpayer was $1,102,429.04 which was increased by the Commissioner to $1,784,-565.11.

After the Commissioner's refusal to allow refund of the overpayment for 1919 the taxpayer filed at various times additional petitions for refund which were all refused by the Commissioner. In 1936 Congress passed an act to authorize the Commissioner to receive and consider on its merits, without regard to limitations, the taxpayer's petition for refund for the year 1919. The passage of this act had been opposed by the Treasury Department and was subsequently vetoed by the President on the ground that it was special legislation.

 In addition to these facts it is important to note that paragraph (6) of the stipulation states:

"The Commissioner of Internal Revenue in determining the additional tax in the amount of $5,169.12 for the year 1921 men-

tioned above adjusted plaintiff's invested capital as follows: (See Exhibit B)

Increase over amount shown in return a/c revaluation of plant, coal lands, etc.... $711,174.57
Less: Amount of depreciation and depletion not deducted in 1919 tax return in computing 1919 taxes.. 29,038.50
Net increase in invested capital over amount shown on return ................ 682,136.07."

As we have already indicated the question is whether on these facts the taxpayer has shown section 284(c) to be applicable. Analysis of its wording shows that three conditions must concur to make it applicable; (1) the taxpayer's invested capital must be *decreased* in a particular year; (2) *due* to the fact that the taxpayer failed to take adequate deductions in previous years; (3) with the *result* that there has been an overpayment of taxes in a previous year. The taxpayer contends that, by paragraph (6) of the stipulation its invested capital was decreased by the Commissioner in 1921 due to the fact that the taxpayer failed to take deductions to the extent of $29,038.50 in 1919 which caused an overpayment of taxes in the previous year in the amount of $13,357.71. The principal contention here made for the defendant is that the facts do not show the existence of the first of these three requirements in that there was no *net* decrease of the taxpayer's invested capital for 1921, as compared with the amount stated in its tax return; but on the contrary there was a *net increase* in invested capital for that year in the amount of $682,136.07. The core of the controversy here is over the proper meaning of the phrase "if the invested capital of a taxpayer is decreased." The defendant contends that the word "decrease" comprehends only a net decrease, as the effect of all adjustments, in the amount reported on the taxpayer's return; while the taxpayer construes it to cover all cases in which an amount is disallowed as invested capital because the taxpayer failed to take adequate deductions in prior years, even though through some other adjustment the net result is an increase rather than a decrease in invested capital.

We have concluded that the taxpayer's construction is the correct one. The other wording of the section itself defines the nature of the decrease which is referred to in the first clause. It is a decrease (any decrease) which is "due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment" of taxes in a prior year. But if it be thought that the literal wording of sec. 284(c) is ambiguous or uncertain in its application to the facts of this case, we nevertheless find a floodlight thrown upon the intention of Congress in enacting this statute when we consider its evident purpose, its legislative history, and its nearly contemporaneous construction by the Treasury Department.

The excess profits and war profits tax legislation, effective from 1917 through 1921, introduced an important new principle in the field of federal income taxation, and was designed to create large additional revenues for the government necessitated by the world war then prevailing. The new tax was in addition to the then prevailing flat rate of taxation of corporation net income, and consisted of a tax rate varying from 20% to 80% of the net income, after the deduction of a specific amount of a few thousand dollars plus an amount equal to 8% of the invested capital of the taxpayer. This new tax formula at once emphasized the great practical importance of the proper determination of the amount of invested capital of corporations, and required the application of correct principles of valuation of corporate property constituting capital investment and the determination of net income on correct accounting principles, including importantly proper deductions for depreciation and depletion which, in the case of many corporations, had not been considered with sufficient care. In consequence the auditing by the Commissioner of corporate income tax returns in many cases required very substantial revision of capital accounts and much delay was unavoidably incurred in proper determinations. It not infrequently happened that the revision of capital accounts as made by the Commissioner for a particular year indicated the necessity of revision of returns for earlier years, especially with respect to adequate allowance for depreciation which had not been taken in those earlier years; but the revision for the later year was at a period beyond the limitations then existing for refunds to the taxpayer for overpayment of taxes in prior years consequent upon failure to take proper deduc-

tions. In view of this situation which had become apparent by 1921, the expert advisor of the Treasury Department in connection with the drafting of the Revenue Act of 1921, explained the situation to Congress with the result that the Revenue Act of 1921, § 252, 42 Stat. 227, carried a provision substantially similar to that later contained in sec. 284(c) of the Act of 1926,[1] and this was carried forward into the Act of 1924, § 281, 43 Stat. 253, and again into the 1926 Act as sec. 284(c).

In 1923 the Bureau of Internal Revenue of the Treasury Department was called upon to construe and apply the section in a case involving the same point that is presented here. In I.T.1871 (II—2 C.B. 249) the Department decided the question in favor of the taxpayer saying in part:

"Bearing in mind the purpose of the enactment and the harsh situation which it sought to remedy, it seems clear that effect may be given to its provisions only by construing the clause ' * * * the invested capital of a taxpayer is decreased' as having reference to any diminution in invested capital resulting from a failure to take adequate deductions in prior years, albeit the net results of an audit may, as in the instant case, result in an increase rather than a decrease in invested capital for the taxable year in question. Any other construction would, in the opinion of this office, defeat the purpose of the enactment."

■ This ruling of the Bureau remained unchanged when the subsequent Revenue Acts of 1924 and 1926 were enacted. It appears never to have been formally rescinded or reversed. The taxpayer contends that under these circumstances the ruling should now be given the force of law, in accordance with what was said in the recent cases of Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52; and Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. In the former case (305 U.S. at page 83, 59 S.Ct. at page 46, 83 L.Ed. 52) the court said:

"Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law."

This contention is controverted by counsel for the Government who, while admitting that its present position is contrary to this treasury ruling, point out that it was not a formal regulation or interpretation promulgated by the Secretary of the Treasury, but only an office ruling. See also, Helvering v. New York Trust Co., 292 U. S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361; United States v. Stewart, 61 S.Ct. 102, 85 L.Ed. ——, November 12, 1940. It is not necessary for us to precisely evaluate the legal status of the ruling because in any event we think it is entitled to great weight

---

[1] The explanation made by Dr. Adams of the Treasury Department was as follows:

"You well know that under the excess-profits tax everything turns on invested capital. You get your principle of 8 per cent exemption on invested capital. Now, invested capital, in turn, included accumulated earnings, and to get at the earnings you have got to go back and trace the history of the corporation to see whether the accumulated earnings have been properly computed. That means, under the excess profits tax, that we should go back to the origin of the company, even if it was back as far as 1888. We would go back as far as we could. We may find in our examination somewhere some manifestly incorrect calculation of the earnings. One of the most common defects and one of the most common errors is the failure of the corporation to take sufficient depreciation into consideration. That is one of the most common mistakes for corporations, and that was particu-

larly true before the income tax became heavy. The corporations failed to take sufficient depreciation. Under such circumstances the accurate auditor would say 'Gentlemen, in your 1914 return you did not take enough depreciation. The thing that you claim is accumulated earnings is not accumulated earnings. You have not established your depreciation yet.' The result is to reduce the amount of their invested capital and increase their expenditures for the period under consideration. If you force them to do that and take them over the past, it seems to me that it is only fair to give them a rebate for taxes overpaid.

"In 1914 the rate was 1 per cent. Assume that a man ought to have taken, say, $20,000 depreciation. He should have taken that much. If we make him do that, then it seems harsh to cut that down and not say 'You can shake up your taxes for that year, it will be taken as a credit against the excess profits tax.' "

as a nearly contemporaneous construction by the Treasury Department of the particular section of the Act of 1921 which we understand was formulated by the Department and adopted by Congress for the very purposes explained to Congress by the adviser of the Treasury Department. It does not appear just when or why the Treasury Department changed its practice, but the original position was apparently still being maintained at least until about 1927 or 1928, as will appear from a close reading of the facts in the case of Southwestern Oil & Gas Co. v. United States, D.C., 29 F.2d 404, 407, from which it appears that, in a case involving an application of section 281 of the 1924 Act, the Commissioner voluntarily returned to the taxpayer, after the fall of the bar of the statute otherwise applicable, that portion of an overpayment in a prior year which was caused by failure to take proper deductions, as determined by the adjustments for a later year, when the capital investment of the taxpayer was in the adjustment decreased for insufficient depreciation taken in a prior year, but the net result of all adjustments was an increase of the invested capital for the later year as compared with the return made by the taxpayer.

In support of its present position the defendant puts much reliance upon First National Bank of Kansas City v. United States, 8 Cir., 65 F.2d 536. We have no quarrel here with the actual decision there in favor of the Government, as the factual situation was quite different from the instant case. There the taxpayer sued to recover overpayments of income taxes for the years 1910–1918, alleged to be due to a decrease by the Commissioner of the taxpayer's invested capital for 1919; but the facts shown were that the Commissioner had in fact increased the taxpayer's invested capital by $82,295.15, of which amount $23,408.54 represented a net increase due to, not too *little* but too *much* depreciation deducted in former years. Clearly sec. 284(c) was not applicable there because there was no decrease of capital investment "due to the fact that the taxpayer failed to take adequate deductions in previous years." It is however true that in the opinion of the court the view was taken that the decrease referred to in the statute meant a net decrease compared with the amount stated in the taxpayer's return. With great re-

spect for the authority of that court, we are unable to concur in the reasoning leading to the opinion expressed. It puts aside the purpose of the statute as revealed in its legislative history and the early construction by · the Treasury Department. The opinion also cites in support of the view taken two cases (Southwestern Oil & Gas Co. v. United States, D.C., 29 F.2d 404, affirmed, 3 Cir., 34 F.2d 446, certiorari denied, 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646; and Denver Rock Drill Mfg. Co. v. United States, Ct.Cl., 59 F.2d 834, 837, certiorari denied, 287 U.S. 651, 53 S. Ct. 115, 77 L.Ed. 563) which, in our opinion, do not support the conclusion stated, although the latter case supports another point in the opinion of the Eighth Circuit, that the section is not applicable unless the "decrease" by the Commissioner effects greater tax liability on the taxpayer. The Southwestern Oil & Gas Company case has been above referred to. In that case it appears from the opinion in the district court that the adjustment made by the Commissioner for the later year included a reduction of invested capital in the amount of $60,505.08 for inadequate depreciation taken in prior years. But the final result of the Commissioner's re-determination of invested capital was a net increase and not a net decrease. It further appears that prior to the suit in that case the Commissioner had voluntarily refunded or credited to the taxpayer the overpayment of taxes for the prior year which resulted from a reduction of the invested capital for the later year, but, in addition to this refund, the taxpayer was suing to recover a larger amount of overpaid taxes which did not result from an understatement of depreciation in the earlier year. For the earlier year the overpayment made by the · taxpayer was $14,481.76. Of this sum $2,857.50, resulting from inadequate depreciation deduction, had been refunded by the Commissioner and the taxpayer was suing to recover the balance of the overpayment, $11,624.26. To this latter item the Government successfully pleaded the bar of limitations because under section 284(c) it is waived only with respect to overpayments due to inadequate depreciation deductions. The analogy of the Southwestern Oil & Gas Company case to this is seen when it is remembered that · here the taxpayer's whole overpayment for 1919 was $22,013.27, of which amount it is seeking to recover only $13,357.71, which

latter figure compares with the sum ·of $2,857.50 in the Southwestern Oil & Gas Company case, which was voluntarily returned to the taxpayer by the Commissioner after the period of limitations which would have been applicable save for section 284(c). Nor is the Denver Rock Drill Mfg. Co. v. United States case in point here because the taxpayer's claim there was denied, not because there was a net increase in invested capital by the Commissioner in the later year, but because the revision of the later year showed a net loss and no tax due. Counsel for the Government has conceded the inapplicability here of these two cases relied upon in the opinion in the Eighth Circuit.

In a recent case in this court, United States v. Piedmont Mfg. Co., 89 F.2d 296, 300, consideration was given to section 284 (c) in its application to a case somewhat similar to the present one. While it does not expressly appear in the opinion of the court in that case, a reference to the record indicates that for some of the tax years under review, there were or should have been net increases in invested capital, despite deductions therefrom consequent upon insufficient deductions for depreciation in a prior year. The section was held applicable to the case, although it does not appear that the question as to what constituted a "decrease" was discussed either in the briefs of counsel or the opinion of the court.

The defendant's construction of the statute would cause results in administration that could not have been intended by Congress. Some hypothetical concrete examples will clearly illustrate this. A taxpayer may report invested capital of $1,000,000, which the Commissioner decreases by $99,000 for insufficient depreciation deducted in a former year, but also increases by $100,000, due to a bookkeeping error made by the taxpayer in his return. Here there is a net increase by the Commissioner, which, on the defendant's construction, would disentitle the taxpayer to the relief evidently within the purpose of the Act. Again we may assume that two corporations, A and B, file returns substantially similar as to capital and income for two successive years, and the Commissioner decreases the invested capital of each for the later year by $99,000 for insufficient depreciation deduction in the earlier year, but for other reasons also increases the capital account of corporation

A by $100,000, and for B in the amount of $98,000. In this case A would entirely lose the benefit of the statute while B would have it. Other examples could easily be stated.

In his opinion in this case the district judge declined to follow the opinion in the Eighth Circuit case, that the "decrease" referred to.in the statute was limited to a net decrease compared with the return, but adopted the view that the statute was inapplicable unless the result of the deductions from capital investment made in the later year caused the taxpayer to suffer some disadvantage by reason of increased taxes over that in the taxpayer's original return, (see Denver Rock Drill Mfg. Co. v. United States; First National Bank v. United States, supra; and McCarthy v. Phillips, Collector, D.C., 13 F.Supp. 293), and concluded that the deficiency tax of $5,169.12 was due to increased *income* determined by the Commissioner and not at all to the deductions from capital investment. In reaching this conclusion the district judge made his own computations which to some extent were affected by typographical errors contained in Exhibit B of the stipulation, which have subsequently been corrected by a further stipulation of counsel for the parties, who here unite in the view that the judgment cannot be sustained on the grounds on which it was founded. We agree with counsel in this view.

The amount of net income for 1921 as determined by the Commissioner is not in issue here, and whatever the amount, if subject to the excess profits tax, it would necessarily be increased in proportion to the decrease of the invested capital. The taxpayer computes that the deduction of $29,038.50 from invested capital in 1921 caused the tax for that year to be increased by $418.05, and that this amount was not lessened by the fact that subsequently the Commissioner abated $4,096.81 of the original deficiency assessment of $5,169.12. The relief from limitations accorded the taxpayer by the section is not conditioned on the effect of the reduction on the tax of the later year, and the amount of the refund for overpayment in the prior year is not measured by the increase in the tax for the later year. The only purpose of the section was to remove the bar of limitations under certain conditions. Congress was dealing with a subject matter which involved complicat-

ed corporate financial accounting, as affected by novel tax legislation. It was impossible to foresee and meticulously provide for all contingencies that might arise thereunder; and therefore, in an effort to be fair to taxpayers, relief from the bar of limitations was necessarily provided for in general terms only. The statute must be applied in accordance with its intent irrespective of results in particular cases.

As the judgment of the district court was based on an erroneous theory, it is necessary to reverse and remand the case for a new trial. When this occurs it will be important to give consideration to some features of the case not heretofore discussed. To recover, the taxpayer must affirmatively show the logical relationship between the decrease of capital investment in 1921 and the overpayment of taxes for 1919. A. Schrader's Son v. United States, 2 Cir., 51 F.2d 1038, 1039. The record before us leaves uncertainty as to this. The paragraph of the stipulation above quoted, standing alone, possibly permits the inference of this logical relationship and probably the parties so intended; but the difficulty lies in the fact that when the Exhibit B, referred to in the same paragraph of the stipulation, is examined, it fails to support the statement as to the deduction of $29,038.50 or any other sum for inadequate depreciation in 1919, from the invested capital for 1921. And further doubt arises when we find from the exhibit that the Commissioner increased the capital investment of the taxpayer by about $500,000 for 1917 and by approximately similar but varying large amounts for the succeeding years. The increase for 1919 was $458,-641.51, for 1920, $555,431.50 and for 1921, $682,136.07. These large increases in the capital investment, beginning in 1917, must necessarily themselves have reflected changes in proper allowances for depreciation in each succeeding year. There is consequent uncertainty on the record before us whether the deductions from capital in 1921 logically induced the deductions from income in 1919, or the reverse. The mere chronological order in which the adjustments for the respective years were made is not controlling, but, as required by section 284(c), it must be shown by the taxpayer that the decrease in 1921 was *due* to the inadequate deductions in 1919, which in turn *caused* the overpayment in the latter year. As Judge Learned Hand pointed

out in Schrader's case, supra, "The sequence is logical, not causal."

Counsel for the defendant, in his brief, seems to impeach the stipulation by contending that the figures in the stipulation (par. 6) are really fictitious, and uses this argument in support of his construction of section 284(c). We do not think the argument relevant to the latter contention, but it does tend to indicate the possible absence of the logical relationship required by the section between the deductions for the respective years. In his reply brief counsel for the taxpayer admits that the figures in the stipulation are not actual but only constructed, but does not point out how they were constructed. Possibly there may be a sufficient explanation in the fact that after making its tax return for 1921 the taxpayer rewrote its capital accounts on its books, increasing its capital investment account from $1,102,429.04 as stated in its 1921 tax return to the figure of $1,402,309.04, which is the book value for that year as stated in the Commissioner's summary in 1928 of the re-audit (Exhibit B, p. 15); and in so rewriting the capital figure the accumulated additional depreciation and depletion for 1919 ($29,-038.50) over the amount stated in the tax return for that year may have been absorbed. In this connection it is noted that the Commissioner's increases of the capital investment for 1921 were added to the base figure of $1,402,309.04, and not to the tax return figure of $1,102,429.04. Among the increases made by the Commissioner was $467,095.80 for adjustment of plant and coal lands. It is also possible this was a net figure, after deducting accumulated depreciation and depletion for prior years including the additional sum of $29,038.50 for 1919. In the audit the Commissioner made no deductions for depreciation or depletion, which is understandable if they had otherwise been absorbed in the net increase of capital investment. The district judge was apparently unable to make a definite finding as to the relationship of the respective deductions. In the stipulation the parties reserved the right to introduce additional testimony, and thus on a retrial of the case the obscurity now existing can presumably be cleared up by further evidence.

As the case may be again tried in the district court, we will discuss briefly two additional points. A minor contention of the defendant is that even if section 284

(c) is applicable, nevertheless the taxpayer is not 'entitled to recover any part of the overpayment of $22,013.27 by reason of a further particular fact now to be stated. In the course of the progress of the case in the office of the Commissioner, he made on March 6, 1925 a jeopardy additional tax assessment of $23,763.58 for 1919. This seems to have been a rather arbitrary amount based on the tentative disallowance of $40,000 of expenditures claimed by the taxpayer. On March 16, 1925 the taxpayer filed a claim for refund in the nominal amount of $1 for 1919 and thereafter on March 20, 1925 filed a further claim for abatement of the additional tax of $23,763.58. In the Commissioner's final revision in 1928 he found a total overassessment of plaintiff's 1919 taxes in the amount of $45,776.85, and thereupon abated the additional jeopardy assessment of $23,763.58 (less a small amount credited to the taxpayer from another source, which was subsequently refunded). At the same time the Commissioner refused to refund the additional overassessment in the amount of $22,012.27, which had been paid by the taxpayer, on the ground that the taxpayer's petition was filed too late. , The defendant now contends that the abatement of the *unpaid* jeopardy assessment of $23,-763.58 should be taken as a satisfaction of the plaintiff's admitted *overpayment* of $22,013.27. We find no merit in this contention. It was also properly rejected by the district judge.

The taxpayer concedes that it is entitled to recover only that portion of the overpaid taxes for 1919 which was caused by inadequate deductions for that year subsequently subtracted from invested capital for 1921. Counsel for the taxpayer in his reply brief submits a computation to show that the amount so due is $13,357.71. However, we note this computation is made on the basis of applying the excess deductions for 1919 to the figures in the taxpayer's original return, and not to the revised figures as found by the Commissioner. Counsel for the defendant has expressly withheld assent to the correctness of the computation. As the point was little discussed here we do not think it necessary to express any opinion with regard to it. If, on the further trial of the case, the taxpayer succeeds in establishing his right to some recovery, the proper amount can been determined in the district court.

Reversed and remanded.