660

## UNITED POCAHONTAS COAL CO. v. UNITED STATES.
### No. 2.

District Court, S. D. West Virginia, at Bluefield.

June 18, 1940.

Richardson & Kemper, of Bluefield, W. Va., and Richard B. Barker, of Washington, D. C., for plaintiff.

Lemuel R. Via, U. S. Atty., of Huntington, W. Va., Charles M. Love, Jr., Asst., U. S. Atty., of Charleston, W. Va., Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and Julian G. Gibbs, Sp. Assts. to Atty. Gen., for defendant.

McCLINTIC, District Judge.

This is a controversy involving a claim by plaintiff for a refund of a portion of its income and excess profits taxes for the year 1919.

Plaintiff is a corporation duly organized and existing under the laws of the State of West Virginia, with its principal place of business at Crumpler, West Virginia.

On March 13, 1920, plaintiff filed its 1919 income and profits tax return, disclosing a net income of $359,198.69, invested capital of $754,035.95 and a tax liability of $126,487.98, the latter amount being paid to the Collector of Internal Revenue. In its return plaintiff took deductions from gross income, in computing taxable net income, of $22,927.59 for depreciation and $7,412.62 for depletion.

In March of 1925 the Commissioner of Internal Revenue advised plaintiff of the assessment of an additional tax of $23,763.58 for the year 1919 under the provisions of Section 274(d) of the Revenue Act of 1924, 26 U.S.C.A.Int.Rev.Acts, p. 56. In the meantime, and before the Collector had given notice and demand for such additional tax, the plaintiff, on March 16, 1925, filed a claim for refund for the year 1919 in the amount of $1 and thereafter, on March 30, 1925, filed a further claim for abatement of said additional tax, which additional tax plaintiff had not paid.

Subsequently, in 1928 the Commissioner of Internal Revenue advised plaintiff of changes in its tax liability for the years 1917 to 1921, inclusive, and of an overassessment of $45,776.85 for the year 1919. Accordingly, he abated the unpaid $23,763.58 additional assessments, leaving a net overassessment of 1919 taxes in the amount of $22,013.27, which he refused to refund on the ground that since plaintiff's refund claim of March 16, 1925 had not been filed within four years from the time the tax was paid or five years from the time the return was due, as provided for by Section 284(b) and (g) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, p. 220, the paid part of the overassessment was barred of recovery under the law as it then stood.

In computing the overassessment of $45,776.85 the Commissioner allowed depreciation and depletion deductions to the plaintiff for the year 1919 of $35,533.18 and $23,845.24, respectively, or excess depreciation and depletion deductions, over the amount taken on the taxpayer's return for the year 1919, of $29,038.50. Plaintiff claimed that of the $22,013.27 overpaid portion of the tax which the Commissioner had refused to refund because of the failure to file a claim for refund within the time provided, $13,357.71 was overpaid because of plaintiff's failure to deduct the additional $29,038.50 for depreciation and depletion in computing its 1919 tax return.

In its tax return for the year 1921, the taxpayer showed its invested capital as $1,102,429.04. The Commissioner determined that it was entitled to an increase in invested capital over that shown on its return in the amount of $711,174.57. However, this increase was in turn reduced by $29,038.50, the additional depreciation and depletion which plaintiff had not deducted in its 1919 return.

The net result of the Commissioner's adjustment of plaintiff's 1921 tax return was that it was assessed an additional tax for that year of $5,169.12. (There seems to be an error in computing plaintiff's invested capital for the year 1921, if the figures on Exhibit B, Schedule 23 are presumed to be correct, which, if correctly added, would decrease the invested capital figure and increase the additional tax as-

sessed to nearly $11,000, rather than the $5,169.12 which was assessed.)

In 1932 plaintiff filed another claim for refund for the year 1919 which was refused by the Commissioner by letter dated March 1, 1935. Later in 1935 a bill was introduced in the Senate and in the House of Representatives, wherein it was proposed that the Secretary of the Treasury and/or the Commissioner of Internal Revenue would be authorized and directed to receive and consider without regard to any statute of limitations any claim filed within six months from the enactment of the act for the refund of any income and excess profits taxes overpaid by plaintiff for the year 1919. The bill as finally passed was vetoed by the President of the United States.

Plaintiff filed a further claim for refund in the latter part of 1937 or the first part of 1938, which claim the Commissioner also denied. This suit was commenced more than six months after and less than two years after the rejection of said claim.

Plaintiff bases its claim for refund upon Section 284(c) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, p. 220, which reads as follows: "If the invested capital of a taxpayer is decreased by the Commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired."

The dispute arises over the interpretation of the words "If the invested capital of a taxpayer is decreased", plaintiff's position being that "invested capital" means actual invested capital, whereas the United States claims that the words mean invested capital as reported.

The final audit of 1928, as indicated by Exhibit B, discloses that in arriving at the amount which plaintiff should have been taxed for the year 1919, the Commissioner deducted an additional $29,038.50 for depreciation and depletion from the invested capital of plaintiff, as he, the Commissioner, had found it, but the increase due to revaluation of the invested capital was more than enough to offset the $29,038.50

additional deduction so that the net result was an increase in plaintiff's invested capital over the figure reported by plaintiff in its return. Thus the audit of plaintiff's 1921 taxes showed a decrease in actual invested capital of this figure of $29,038.-50 which plaintiff had failed to deduct in its 1919 return, but in the audits of both 1919 and 1921 taxes there was an increase in the invested capital figure over that reported by plaintiff despite this deduction, which was due to the revaluation of plaintiff's assets.

Before attempting to interpret the statute involved herein, it becomes necessary to look to the meaning and purpose behind the enactment of such a provision.

Subdivisions (b) and (g) of Section 284 provide a period of limitation within which a taxpayer must file a claim for refund for taxes paid, and if such claim for refund is not made within the specified time, it is barred from recovery. However, the Commissioner of Internal Revenue may, at a date after the expiration of the taxpayer's time limit, audit the taxpayer's books and determine that the tax assessed and paid was incorrect because of various reasons, and, if such determination indicates that the tax paid was insufficient, may offset it against later years' overassessments or collect it in other ways. And if the changes made in the return for one year result in an increase in taxation for a later year, but because of the time limit set in the above mentioned subdivisions the taxpayer cannot claim a refund which he would have been entitled to had the changes been made prior to the time he paid his tax, then the taxpayer suffers a disadvantage which is unfair to him. Hence subdivision (c) was enacted, which relieved the taxpayer of this disadvantage and gave him a remedy where the Commissioner looked back over his records and found that the taxpayer had not taken certain deductions that he should have taken in former years which decreased his invested capital account for the later year and resulted in an increased tax for that later year.

This clause of the section was undoubtedly enacted to remedy the harsh situation imposed on the taxpayer and thus the taxpayer should be entitled to the relief it affords only when he had suffered a loss due to this disadvantage. In other words, he must have been assessed a higher tax in a subsequent year and the increase must

be directly traceable to certain deductions. These deductions must have arisen out of some change in invested capital that would have permitted the taxpayer to reduce his net income for a prior year, had he known of the change before he paid his tax, and which would have reduced his tax for that prior year had he made the deduction, but, having failed to do so, and having failed to claim a refund within the prescribed time, is now barred from recovering such amount.

The whole determination of the excess profits tax is based upon invested capital. The greater the amount of invested capital, the larger the portion of income exempt from said tax, because the exemption is based on a percentage of invested capital. Also, what portion of the income that is not exempt falls into the 20% tax bracket and what portion falls within the 40% tax bracket is determined by the amount of invested capital.

Section 284(c) reads: "If the invested capital of a taxpayer is decreased * * * and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years * * *." Just what was meant by the terms "invested capital" and "decreased" is a matter of some speculation.

Plaintiff relies on a ruling or an office opinion of the Bureau of Internal Revenue that was published shortly after the adoption of the Revenue Act of 1921 (which contained a similar provision), in Internal Revenue Bulletin, Cumulative Bulletin II –2 (1923), page 249, and upon a recent Supreme Court case. After discussing the principles upon which the excess profits tax is based, the conclusion expressed in the office opinion is: "Bearing in mind the purpose of the enactment and the harsh situation which it sought to remedy, it seems clear that effect may be given to its provisions only by construing the clause '* * * the invested capital of a taxpayer is decreased' as having reference to any diminution in invested capital resulting from a failure to take adequate deductions in prior years, albeit the net results of an audit may, as in the instant case, result in an increase rather than a decrease in invested capital for the year in question. Any other construction would, in the opinion of this office, defeat the purpose of the enactment."

■ In the recent case of Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 46, 83,

L.Ed. 52, the court says: "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." There are a number of cases supporting this rule, some of the most recent of which are United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893, and Old Mission Co. v. Helvering, 293 U.S. 289, 293, 55 S.Ct. 158, 79 L.Ed. 367.

The defendant relies principally on the case of First National Bank of Kansas City, Missouri v. United States, 8 Cir., 65 F.2d 536, 539, and two cases cited therein, decided in 1933, where the facts are somewhat similar to the case at bar. Judge Sanborn, in his opinion, says: "Our opinion is that the decrease in invested capital which gives to the taxpayer the right to a credit or refund because of inadequate deductions in previous years is a decrease of reported invested capital for the years under audit, and a consequent increase of tax liability for those years, and that, in determining whether invested capital has been decreased, both deductions and additions made by the Commissioner must be considered."

The office opinion above mentioned and relied upon by plaintiff is quoted by Judge Sanborn at considerable length, but he disagrees with the construction given to Section 284(c) by that opinion. Nothing is said about the rule laid down in Helvering v. Winmill, supra, and of course that case had not been decided at the time of Judge Sanborn's opinion. Said office opinion, it is true, is the only one found construing the provision in question and it was published only three years prior to the enactment of the Revenue Act of 1926, and therefore might not, strictly speaking, come under the rule laid down in the Helvering case, but it did concern a very similar provision of an earlier Act and must be given considerable weight, if the Helvering case is to mean anything.

■ This court cannot literally agree with the statement above quoted from the Bank of Kansas City case, particularly with the part that reads "is a decrease of reported invested capital" (italics supplied). If the purpose behind this enactment is correctly stated above, and it is stated as such in Southwestern Oil & Gas Co. v. United States, D.C., 29 F.2d 404, Denver

Rock Drill Mfg. Co. v. United States, Ct. Cl., 59 F.2d 834, cited by Judge Sanborn, the words "the invested capital of a taxpayer is decreased" were intended to mean a decrease in the figure used by the Revenue Bureau in assessing the taxpayer and determining the amount of tax he should pay, which does not necessarily mean either the actual invested capital or the reported invested capital. If the exhibits included in the record in this case and the facts cited in the Helvering case are indicative of the usual result of an audit by the Revenue Bureau, and they probably are, at least with the statements of large companies, the figures of the Commissioner very seldom agree with the figures of the taxpayer in determining the amount of invested capital, income or any of the various other items upon which said tax is based. But that does not necessarily mean that the figure for invested capital used by the Commissioner discloses the actual invested capital any more than the figure reported by the taxpayer correctly discloses the same. The provision of Section 284(c) would seem to carry out its purpose only if it can be taken advantage of when there has been a decrease of the figure used for invested capital by the Commissioner in making an assessment, due to deductions which the taxpayer might have taken but failed to do so because of bookkeeping errors which result in a disadvantage to him in computing taxes for subsequent years.

This construction would hardly give the taxpayer whose returns were audited an unfair advantage over the taxpayer whose returns were not audited merely because of that fact, as stated by Judge Sanborn in the case above quoted from, because without an audit a taxpayer would not have his later year's taxes increased and hence would suffer no disadvantage which Section 284(c) sought to remedy.

But, although this court does not agree with some of the statements propounded by the learned Judge in the Bank of Kansas City case, supra, an application of the facts in the instant case to the interpretation of the statute which this court has seen fit to place upon the words thereof, necessitates the same conclusion as that reached in the Bank of Kansas City case; that is, that the taxpayer is not entitled to a refund.

If the additional depreciation and depletion that was not taken by plaintiff in 1919 was occasioned solely by the fact that upon audit the Commissioner of Internal Revenue determined the invested capital of plaintiff for 1919 to be higher than reported by it, which, using the same percentage basis for depreciation, would increase the amount such capital should have been depreciated in 1919 by plaintiff, then plaintiff, the taxpayer, is not entitled to the benefits of Section 284(c), because it suffers no disadvantage from this change in invested capital, for its succeeding years' returns are based upon that increased invested capital figure. In other words, although plaintiff should have paid a smaller tax in 1919, it is not forced to pay a higher tax in succeeding years because of this revaluation, for the increased figure will be used in computing its taxes for the years that follow, which will result in a greater amount of income exemption and hence a lower tax.

But if the increase in depreciation that the taxpayer should have but didn't take in 1919 results, not from a mere revaluation of its invested capital account, but from some other adjustment which would increase the invested capital figure more than the deduction allowable for depreciation so that the net result is an increase rather than a decrease in the taxpayer's invested capital, as it actually was before such additions and subtractions were made (not necessarily as it was reported), then, even though the result is a net increase rather than a net decrease in the invested capital figure, the taxpayer should be entitled to the benefits of Section 284(c), because he has suffered a disadvantage from the government's right to audit his records at a time subsequent to the expiration of the time limit for a refund claim as provided by Section 284(b) and (g), with the result that any claim for refund it might have been entitled to because of such adjustments is then barred by the statute of limitations. Section 284 (c) is a remedial statute enacted to remedy the harsh situation that might be imposed upon a taxpayer because of the aforesaid privilege of the government, but where the taxpayer suffers no disadvantage and is not placed in a harsh situation, it may not use this section to relieve itself of the results of its own laches.

A study of the facts in the instant case may clarify the foregoing statements, as well as indicate why the plaintiff in this case is not entitled to a refund. And, too, a comparison of the figures reported by

plaintiff in its 1919 return as set out in Exhibit A and the figures reported by plaintiff in its 1921 return as set out in Exhibit C with the figures used by the Commissioner of Internal Revenue in computing plaintiff's taxes for those two years as set out in Exhibit B, will illustrate the improbability that Section 284(c) will ever give the relief intended by it, if it is interpreted to mean that there must be a *decrease* in *reported* invested capital before a taxpayer may take advantage of the relief afforded thereby.

The Commissioner of Internal Revenue, in computing plaintiff's taxes for 1919 and 1921, as shown in Exhibit B, does not use any of the figures reported by plaintiff for either invested capital, deductions or net income. In each instance the figure used by the Commissioner is substantially higher than that reported by plaintiff. His computation seemingly is not based at all on plaintiff's report. If such procedure is usual in auditing a taxpayer's accounts, and it probably is, Section 284(c) would afford no relief whatsoever if literally interpreted as requiring a decrease in *reported* invested capital, because such would seldom, if ever, be the case.

In the case at bar, plaintiff admittedly paid a larger tax for the year 1919 than it should have paid. Had it filed a claim for refund within the time prescribed by Section 284(b) and (g) it would have been entitled to a refund. This it did not do. The reason the amount paid was excessive was because a revaluation and recomputation of its capital and income, which was made subsequent to the expiration of the time limits aforesaid, if made prior to the payment of plaintiff's 1919 taxes, would have permitted plaintiff to take more of an exemption from its net income in determining the taxable income and the net income figure itself would have been lower because of the subtraction of a larger item for depreciation and depletion expense. Thus plaintiff would be entitled to the relief afforded by Section 284(c) if it suffered a disadvantage because such revaluation resulted in the payment of a larger tax in a subsequent year which it would not have had to pay but for this revaluation. But did plaintiff suffer such a disadvantage or pay a greater tax in 1921 because of such increase in its invested capital? Plaintiff was assessed an additional tax of $5,169.12 for 1921, it is true. Had the Internal Revenue Bureau correct-ly added the figures it uses in Schedule 23 of Exhibit B, it would have found plaintiff's invested capital to be $1,384,565.11 instead of $1,784,565.11 (the figure used) and completing the computation on that basis plaintiff should have been assessed an additional tax of $10,925.52 rather than the $5,169.12 additional assessment actually levied.

But using either $1,784,565.11 or $1,384,565.11 as plaintiff's invested capital for 1921, if plaintiff's reported income of $119,160.36 is used to compute the amount of its tax liability, rather than the net income figure of $173,609.08 as used by the government in its audit (Schedule 21 et seq., Exhibit B), and a computation is made in all other respects in accordance with the government's calculation set forth in Exhibit B, there would have been no additional assessment at all. Thus there was an additional assessment in 1921, which plaintiff uses as a basis for its claim to the relief provided by Section 284(c), not because of any increase or decrease in invested capital, but because of an increase in its net income. True, this might be a disadvantage to plaintiff, as it was calculated after the expiration of the time allowed for a refund claim, but Section 284(c) does not provide relief for such a situation. The words "decrease in invested capital" cannot possibly be construed to mean increase in net income, and, hence, plaintiff is not entitled to the relief provided by that section.

Going further and computing plaintiff's tax liability for 1921, using the invested capital figure reported by it in Exhibit C but also using the increased net income figure as found by the government, the result would be that plaintiff should have been assessed an additional tax of $14,991.88, whereas it was actually assessed an additional $5,169.12. This is further proof that the increase in the net income figure used by the Commissioner of Internal Revenue to compute the tax caused the additional tax in 1921, rather than the increased invested capital figure. Plaintiff can hardly claim a disadvantage if the last calculation is used, because it was assessed almost $10,000 less than it would have been had this calculation been used.

Therefore, there has been no decrease in invested capital by the Commissioner that resulted in an increased tax for a later year such as would permit plaintiff to recover the overpaid portion of its 1919

taxes under the provisions of Section 284(c). The additional tax assessed for 1921 was due to the finding by the Commissioner that plaintiff's net income for that year was higher than that reported by plaintiff and said section provides no relief under such circumstances. And this is so in the instant case whether the section is construed to mean decrease in reported capital or decrease in actual capital.

As a result of the above conclusion it becomes unnecessary to pass on the government's second and third defenses. But in passing it might be said that in the opinion of this court neither argument would be a sound defense to plaintiff's claim if it were otherwise valid.

Judgment for defendant.